Bradbury, C. J.
The record discloses that the plaintiff in error, a body corporate, was engaged in transporting in pipes, natural gas to the city of Youngstown, and under ground along its streets to supply'its inhabitants with fuel; that the defendant in error owned valuable improved real estate in said city, the improvements of which were substantially destroyed by an explosiorf of the gas, while in course of transportation along a street of said city adjacent thereto. Upon the trial of the action in the court of common pleas, the evidence tending to show that the explosion occurred without negligence of the plaintiff in error, and it, contending that it was not liable for the results of such explosion, in the absence of proof of its negligence contributing thereto, requested the following separate propositions to be given in charge to the jury by the court:
“ I. If you shall find, from the evidence, that the gate or valve which defendant placed in its line of pipe, broke by reason of some latent defect in the metal of which it was composed, which defect defendant did not discover, or by the exercise of reasonable care could not have discovered, and that the escape of gas was due to such break, then the plaintiff cannot recover, and your verdict should be for the defendant.
“ II. The court says to you, that in and about the laying and constructing of the line of pipe which the defendant laid in and along Boardman street, the defendant was not required by the law to use the best possible mode and appliances for laying and constructing such line; but it was only required to lay and construct its pipe line in such manner and to employ such means and appliances, to guard against the escape of gas, as were at that time in common use by persons of ordinary care and prudence, who were at that time engaged in the same similar business, in similar locations.
*699 “ III. The court says to you, that in and about the laying and constructing its line of pipe in and along Boardman street, the defendant was required to use only such care and precautions to guard against the escape of gas, as prudent persons, who, at the time when said line of pipe was laid and constructed, and who were then engaged in the same kind of business, were accustomed to use, under the same or similar circumstances.
“IV. If you shall find, from the evidence, that the fire, by which plaintiff’s property is alleged to ■ have been destroyed, was caused by the gas escaping from. the break which is alleged to have occurred in the gate or valve forming a part of defendant’s line; but, if you shall, nevertheless, find, from all the evidence in the case, that such break did not occur through any negligence on the part of the defendant, in any of the particulars set forth in the plaintiff’s petition, but, on the other hand, occurred by reason of some casualty over which the defendant had no control, and of which it had no knowledge, in time to prevent the injury which may have resulted therefrom, then the defendant would not be liable, and j’-our verdict should be in favor of the defendant.
“VII. The burden of proving negligence is on the plaintiff, and before there can be any recovery in this case, you must be satisfied, by a fair preponderance of the evidence, that the defendant was, in the manner averred in the petition, guilty of the negligence which directly resulted in the damage to the plaintiff by reason of the destruction of her property described in the petition, or some part thereof.
“VIII. Before the plaintiff can recover in this action, she must satisfy you, by a fair preponderance of all the evidence, that the defendant was guilty of negligence in and about some of the particulars set forth in her petition; and if you are not so satisfied that the defendant was guilty of negligence, your verdict should be in favor of the defendant.”
The court declined to give either proposition to' the jury, and instead instructed them as follows:
“ But, if on the other hand, you find that the defendant was engaged in the transportation of natural gas for the *700 purposes mentioned, that the same escaped from the pipe line of the defendant at the gate or valve therein whilst the ' same was being so transported, at the time and place, ánd in the manner claimed by the plaintiff in her petition, and that the buildings were in fact destroyed by reason thereof, and that the same was the proximate and direct cause of the destruction of the buildings mentioned, and that the plaintiff’s own acts and conduct did not contribute to the injury of which she complains, then your verdict should be for the plaintiff, in such sum as the evidence shows you she has actually been damaged.”
The effect of the instructions thus refused and given, was to render the plaintiff in error liable, if the explosion was the proximate cause of the injury, although the jury should entirely exonerate it from negligence in connection therewith.
The question of how strictly, one, who undertakes to transport through or along the highways of populous districts, or to store adjacent thereto, subtle and dangerous substances, like natural gas, should be held to the duty of absolutely controlling it, is both interesting and important; but we are relieved from the duty of discussing it, in the case before us, by the provisions of the statute under which the plaintiff in error was authorized to transport natural gas through the streets of Youngstown at all.
That statute reads as follows: * * * “But said company shall be liable for any damages that may result from the transportation of the same.”
This language is explicit and unambiguous. This court is asked to add to the language chosen by the legislature, the word “negligent,” so that the statute may read: “But said company shall be liable for any damage that may result from the negligent transportation of the same.”
Upon principles of universal application the company would be held liable for any damages that might result from its negligence in transporting natural gas through the streets of a city; therefore, to construe the statute as the plaintiff in error contends, would deny it any operation or effect whatever. ' We think that, when the subtle and dan *701 gerous properties of this fluid are considered, together with the long existing, and perhaps still unsettled, controversy, that has claimed the attention of courts and text writers, both in England and in this country, respecting the extent of the liability of those who deal in dangerous substances, for damages caused by them, the absence of the word “negligent,” in the act declaring the liability of the plaintiff in error, has great significance, and can only be reconciled with a legislative purpose to impose upon the company the duty of absolutely controlling this substance whenever it should .introduce it into places where, if it escaped control, it would menace the lives and property of others who had no control over it, and who were without fault themselves contributing to injury.

Judgment affrtned.